FILED
2026 Oct-30 AM 10:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID A. LINVILLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:26-cv-470-EGL** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| ***Commissioner of Social Security*,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM OPINION

David Linville seeks judicial review of the Commissioner of Social Security's denial of his application for supplemental security income. After careful review of the administrative record and the parties' briefs, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings.

## BACKGROUND

### A. Procedural Background

On October 15, 2022, Linville filed an application for supplemental security income alleging disability beginning October 27, 2021. Doc. 6-3 at 11. The Social Security Administration denied the claim on October 15, 2022, and again on reconsideration on August 22, 2024. *Id.* Linville requested a hearing, which an ALJ

held by telephone on March 10, 2025. *Id.* The ALJ denied his claim on April 3, 2025. *Id.* at 21.

The Appeals Council denied review on January 21, 2026, *id.* at 2–4, and the ALJ's decision became the Commissioner's final decision on that date, *see id.* at 9.

**B. Factual Background**

Linville was born on February 10, 1975, and was 47 years old on the date his application was filed. *Id.* at 20. He has at least a high school education and past relevant work as an order picker. *Id.* He alleged disability due to osteomyelitis, arthritis of the shoulders, discitis, and diabetes. Doc. 6-4 at 2.

## ALJ DECISION

Disability determinations follow a five-step sequential evaluation. The ALJ considers whether the claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments; (3) has an impairment meeting or equaling a listed impairment; (4) can perform any past relevant work; and, if not, (5) can adjust to other work existing in significant numbers in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

At step one, the ALJ found that Linville had not engaged in substantial gainful activity since October 15, 2022, his application date. Doc. 6-3 at 13. At step two, the ALJ found the following severe impairments: disorder of the cervical spine, disorder

of the lumbar spine, osteoarthritis of the bilateral hips, mild obesity, umbilical hernia, major depressive disorder, and generalized anxiety disorder. *Id.*

At step three, the ALJ found that no impairment, alone or in combination, met or medically equaled a listed impairment. *Id.* at 13–15.

The ALJ then assessed Linville's residual functional capacity (RFC) and found that he could perform light work as defined in 20 C.F.R. § 416.967(b), except that he:

> can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently. He can push and/or pull within those same exertional limits. He can stand and/or walk for about six hours altogether, and he can sit for about six hours in an eight-hour workday. He can occasionally balance, stoop, crouch, kneel, crawl, and/or climb – but not ladders, ropes, and/or scaffolding. He can perform tasks not requiring overhead reaching, but he can reach in other directions/planes on a frequent basis. He can perform tasks not involving the operation of vibrating tools or equipment. He can perform tasks not involving concentrated exposure to pulmonary irritants such as dust, gases, fumes, and/or smoke. He can perform tasks not involving exposure to extremes of temperature and/or humidity and/or exposure to workplace hazards such as unprotected heights or dangerous moving machinery. The claimant can understand and carry out short, simple instructions consistent with the performance of simple, unskilled work of a routine, repetitive nature. He can make simple, work-related decisions, but he cannot carry out any complex instructions and cannot engage in any long-term planning, negotiation, or independent goal-setting. He can tolerate occasional interaction with supervisors and co-workers and members of the general public. He can tolerate only minor, infrequent changes within the workplace.

*Id.* at 15–20.

At step four, the ALJ found that Linville could not perform his past relevant work and proceeded to step five. *Id.* at 20. Relying on the vocational expert's

testimony, the ALJ found that Linville could perform other work existing in significant numbers in the national economy, such as production assembler, hand packager, and electronics worker. *Id.* at 20–21. The ALJ then concluded that Linville was not disabled since October 15, 2022, his application date. *Id.* at 21.

## STANDARD OF REVIEW

Judicial review under the Social Security Act is narrow. The Court asks only whether the Commissioner's decision is supported by substantial evidence and rests on the correct legal standards. *Winschel*, 631 F.3d at 1178.

Whatever the meaning of "substantial" in other contexts, the threshold here "is not high." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178. The Court must affirm if that standard is met, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

## DISCUSSION

Linville contends, among other things,[1] that the ALJ failed to adequately address his thoracic spine disease. He claims that the ALJ "barely acknowledged the

[1] Because the Court finds that the ALJ's failure to explain his evaluation of Linville's thoracic-spine condition is sufficient reason to remand this matter, the Court declines to address Linville's remaining allegations of error. The ALJ, however, should consider these arguments on remand.

condition," "did not indicate whether it is a severe impairment," and "did not explain how it was accounted for" in his RFC determination. Doc. 14 at 2. All of this, he argues, suggests that the ALJ has "cherry picked" evidence from the medical record to support his conclusion, or otherwise missed such evidence. *Id.* at 5–14.

While "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," several aspects of the ALJ's decision, when considered together, lead the Court to conclude that the ALJ's decision as to Linville's thoracic spine disease was "a broad rejection which is not enough to enable" the Court "to conclude that the ALJ considered h[is] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotation marks and brackets omitted).

*First*, numerous important parts of the record appear to have been missed by the ALJ. Linville was hospitalized in October 2021 with conditions related to a methicillin-resistant staphylococcus aureus (MRSA) that later infected his thoracic spine. *See* Doc. 6-9 at 4, 44–45; Doc. 6-10 at 96–97. But the ALJ's overview of the evidence begins several months later:

> In May 2022, the claimant was seen for follow-up following treatment for thoracic spondylodiscitis. The claimant was treated with a six-week regimen of vancomycin. It was noted that the claimant had a methicillin resistant staphylococcus aureus infection in November 2021, as well.

Doc. 6-3 at 16. The ALJ says nothing about Linville's hospitalization in April 2022, where doctors found MRSA and other signs of degeneration in his thoracic spine,

Doc. 6-9 at 44–45, 47, or his twenty-three-day hospitalization in October 2021, when he was first diagnosed with MRSA, Doc. 6-10 at 96–101. The ALJ noted Linville's ten-day hospitalization in October 2022 for osteomyelitis, where he "was noted to have had three infections in 12 months," Doc. 6-3 at 16, but failed to mention that an MRI was performed during that stay, which showed endplate deformity of the T10 vertebrae, Doc. 6-14 at 91–92. The ALJ did not address Linville's spinal x-rays taken in September 2022, Doc. 6-10 at 40–41, or his visit to the emergency room later that month for severe back pain, *id.* at 6, 15. The only references to Linville's thoracic-spine condition after October 2022 are two mentions of imaging showing "T10 and T11 discitis with loss of disc space height and posterior epidural bulging with moderate canal narrowing" in February 2023, Doc. 6-3 at 16, and another showing "mild bilateral neural foraminal stenosis at T10-11" in April 2024, *id.* at 17.

And other pieces of evidence that appear to be highly relevant were never addressed: A December 2022 T10 biopsy, Doc. 6-15 at 132, a March 2023 thoracic-spine examination and an April 2023 T10 biopsy, *id.* at 132–34, a June 2023 visit to a pain management center to treat thoracic-spine pain where a doctor noted that available treatment was limited because there was "too much risk of inducing recurrent infection in [Linville's] spine with any spinal injections," *id.* at 161–64, an August 2023 return to pain management, Doc. 6-16 at 36–39, a visit to urgent care

for back pain in September 2023, Doc. 6-18 at 53, a follow-up visit to pain management in September 2023, Doc. 6-16 at 31–35, a January 2024 urgent-care diagnosis of thoracic-spine pain, Doc. 6-18 at 49, and, ultimately, Linville's express reference to his thoracic pain during his hearing, Doc. 6-3 at 58 ("[M]y vertebrae is rubbing against itself or something like I don't have the cushion between the vertebrae and at the T10 T11… One of the doctors have told me that basically they won't do anything for me until I'm basically bedridden. I guess it's high risk.").

*Second*, when the ALJ set forth the claimant's severe impairments, the ALJ listed "disorder of the cervical spine, disorder of the lumbar spine, osteoarthritis of the bilateral hips, mild obesity, umbilical hernia, major depressive disorder, and generalized anxiety disorder," but did not mention the disorder of the thoracic spine documented above. Doc. 6-3 at 13. The Government is correct that at step two of the evaluation, the ALJ need not list every impairment. *See* Doc. 13 at 5–6. But when the ALJ recounted Linville's hearing testimony, the ALJ appears to again leave out any mention of thoracic-spine disorder: "At the hearing, the claimant testified that … he has multiple joint conditions. He has neck pain, low back pain, bilateral hip pain, along with diabetes mellitus. His diabetes causes dizziness." Doc. 6-3 at 15. Again, thoracic back pain is not mentioned, despite Linville testifying to it during the hearing. *See* Doc. 6-3 at 58.

*Third*, the ALJ's ultimate weighing of the evidence appears to be faulty and incomplete. When addressing Linville's back, the ALJ said the following:

> There is no question of neurological involvement with respect to the spinal issues. Imaging shows nothing in that regard, and claimant has demonstrated negative straight leg raising.

Doc. 6-3 at 19. But the ALJ never explained how that conclusion reconciles with evidence regarding earlier MRIs that reported moderate to severe stenosis in the thoracic spine and an MRI that showed endplate destruction. *See* Doc. 6-14 at 90–92; Doc. 6-17 at 13.

The ALJ also stated:

> When seen at UAB Neurology, claimant reported that his joint and back pain was only "mild" (Exhibit 25F/p.2). At other medical visits, the claimant simply reports no pain (see, e.g., Exhibit 26F/p.2).

Doc. 6-3 at 19. But the "no pain" report relied upon by the ALJ appears to be taken out of context, as Linville was visiting a urologist that day for a complaint about his prostate. Doc. 6-18 at 98–102. That Linville reported a "pain scale" of "0" to his urologist does not support an implicit conclusion about Linville's thoracic spine condition. *Id.* at 98.

In light of these three factors, the Court cannot conclude that the ALJ considered Linville's thoracic spine "condition as a whole." *Dyer*, 395 F.3d at 1210. The evidence does not necessarily compel a conclusion in Linville's favor, but an ALJ nevertheless must "state with at least some measure of clarity the grounds for

his decision." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). Part of that is "mak[ing] it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination." *Lea v. O'Malley*, No. 23-cv-796, 2024 WL 3262348, at *4 (N.D. Ala. July 1, 2024). Given the extent of unaddressed evidence relating to Linville's alleged thoracic spine condition, and the apparent lack of conclusions regarding it, it is not clear what role, if any, the condition played in the ALJ's determination. Where an ALJ's decision does not reveal whether an alleged medically determinable impairment was considered in combination with the claimant's other impairments, and the record contains evidence that the impairment could have affected the RFC, the Court cannot meaningfully review the decision and remand is required. *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001) (finding that "remands are required when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis").

## CONCLUSION

Because the ALJ's decision does not reveal whether the ALJ adequately considered Linville's alleged thoracic spine condition, the Commissioner's decision is due to be reversed. This matter is remanded to the Commissioner for further proceedings consistent with this memorandum opinion. The Court will enter a separate final order.

**DONE** and **ORDERED** this 30th day of October, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE